Charleen J., appellant, v.
Blake O., appellee.
___ N.W.2d ___

Filed November 7, 2014.    No. S-14-021.

1. **Motions to Dismiss: Jurisdiction: Appeal and Error.** Aside from factual findings, dismissal for a lack of subject matter jurisdiction is subject to a de novo review.
2. **Actions: Jurisdiction.** A procedure permitting a cause of action to be transferred to another district court cannot operate to confer jurisdiction on a tribunal that lacked it.
3. **Jurisdiction: Words and Phrases.** Subject matter jurisdiction is the power of a tribunal to hear and determine a case in the general class or category to which the proceedings in question belong and to deal with the general subject matter involved.
4. **Courts: Jurisdiction.** The district courts of Nebraska are courts of general jurisdiction and thus have inherent power to do all things necessary for the administration of justice within the scope of their jurisdiction.
5. **Constitutional Law: Jurisdiction.** Article V, § 9, of the Nebraska Constitution confers equity jurisdiction upon the district courts.
6. **Paternity: Statutes.** The paternity statutes modify common law and, therefore, must be strictly construed.
7. **Courts: Jurisdiction.** Under the doctrine of jurisdictional priority, when different state courts have concurrent original jurisdiction over the same subject matter, basic principles of judicial administration require that the first court to acquire jurisdiction should retain it to the exclusion of another court.
8. **Jurisdiction.** The rule of jurisdictional priority does not apply unless there are two cases pending at the same time.
9. **Jurisdiction: Paternity: Child Custody: Minors.** It is consistent with the principles of judicial comity and courtesy underlying the doctrine of jurisdictional priority to consider the matter of a child's custody still "pending" in the district court wherein the original action for paternity was brought until that court relinquishes its jurisdictional priority or the child reaches the age of majority.

Appeal from the District Court for Madison County: Mark A. Johnson, Judge. Affirmed.

Michael C. Moyer, of Moyer & Moyer, for appellant.

Joel E. Carlson, of Stratton, DeLay, Doele, Carlson & Buettner, P.C., L.L.O., for appellee.

Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

McCormack, J.

## NATURE OF CASE

The district court for Boone County determined paternity in a paternity action, but did not explicitly determine custody. Approximately 3 years later, all parties lived in Madison County, Nebraska. The mother filed a complaint for custody in the district court for Madison County. The question presented is whether the district court for Madison County was correct in dismissing the case and vacating its prior orders under the mother's complaint on the ground that the child's paternity had been decided by the district court of another county.

## BACKGROUND

In December 2010, the district court for Boone County issued a default judgment of paternity against Blake O., the father of a child born out of wedlock in 2009. The action had been commenced by the Department of Health and Human Services. Charleen J., the mother, was not a party to the action, but the court ordered child support to be paid to the mother. The court apparently was not asked to explicitly determine custody, and it did not do so.

In 2013, the mother filed a complaint for custody in the district court for Madison County. By that time, both the mother and the father of the child lived in Madison County. The complaint set forth the prior paternity order from the district court for Boone County. The complaint further set forth that the district court for Madison County had issued a domestic abuse protection order against the father and that there was no other pending litigation in another county concerning the custody of the child.

In June 2013, the district court for Madison County granted the mother's motion for temporary custody of the child, subject to the father's reasonable visitation rights. The court's order noted the prior paternity determination in the district court for Boone County.

In October 2013, the mother moved for a default judgment. At the hearing, which the father failed to attend, the court orally pronounced that it was granting the motion for default judgment with the exception of determining the child's best

interests. The hearing on the child's best interests began, and the mother began to testify. Among other things, the mother testified that paternity was established by an order of the district court for Boone County.

At that point, the court interjected that it needed to set aside the default judgment on the ground that it lacked subject matter jurisdiction. The court said, "complaints for custody, we do not have subject matter jurisdiction for — statutorily — that we believe that the proper venue for that is in the original paternity action."

The court then indicated that the mother should move to transfer venue to Boone County. The mother orally moved to transfer venue, and the motion was orally granted. By written order, the court "vacate[d] its order announced in open Court" and continued the matter for another hearing. The court further stated in its order that the mother "may take action as she deems necessary to either transfer this case or initiate a new action in the paternity matter."

In a written order on November 1, 2013, subsequent to the scheduled hearing, the court stated that because paternity was previously established in a different county, it lacked "subject matter jurisdiction" to determine custody of the child. The court overruled the motion for default judgment and granted the mother's motion to transfer venue.

Thereafter, the father filed a motion with the district court for Madison County for leave to file a responsive pleading out of time. The motion requested that the court deny the motion to transfer venue or reconsider the order approving transfer, and to require the parties to enter into immediate mediation.

In response, the mother filed another motion to transfer venue to the district court for Boone County for all further proceedings on her complaint for custody.

After a hearing was held, on November 12, 2013, the court issued an order vacating its November 1 order. The court had by then come to the conclusion that because it lacked subject matter jurisdiction, it had no jurisdiction to transfer the cause to another county. The November 12 order also dismissed the case without prejudice.

On November 20, 2013, the mother filed a "Motion for New Trial, Motion to Amend and Motion to Clarify." The motion asked for a new trial and order reinstating the mother's complaint for custody "so that this matter may be transferred to Boone County District Court pursuant to [Neb. Rev. Stat.] § 25-410 [Cum. Supp.] 2010 for further proceedings."

On November 26, 2013, the father filed an objection to the mother's motion to transfer venue on the ground that the district court for Madison County lacked subject matter jurisdiction and that because neither the mother nor the father lived in Boone County, that venue would be inconvenient for them.

Another hearing was held, in which the mother argued that the court was incorrect in concluding that it lacked subject matter jurisdiction. She argued that instead, the case should be transferred for lack of venue so she would not have to start over with new filing fees, service fees, and more attorney fees, and without the benefit of the temporary custody order. The father indicated that he believed he would be able to file a third-party motion in Boone County and have the district court for Boone County transfer jurisdiction to Madison County. As the father again noted, that venue was inconvenient because the parties no longer lived there.

The court explained that it used to be the practice to allow separate actions for determination of custody when there was a prior paternity action that did not determine custody. But the district courts of the Seventh Judicial District now believed that they lack subject matter jurisdiction over such actions. The court issued an order denying the mother's motion to transfer venue; the mother's motion for new trial or, in the alternative, motion to amend; and the motion to clarify. The court reaffirmed its ruling that it lacked subject matter jurisdiction and that the prior order of November 1, 2013, was vacated. The mother timely appealed to this court.

## ASSIGNMENTS OF ERROR

The mother assigns that the district court for Madison County erred in (1) finding that it lacked subject matter jurisdiction to hear the mother's complaint for custody, visitation,

and parenting time; (2) overruling the mother's motion to transfer venue to the district court for Boone County; and (3) dismissing the mother's complaint for custody, visitation, and parenting time.

## STANDARD OF REVIEW

[1] Aside from factual findings, dismissal for a lack of subject matter jurisdiction is subject to a de novo review.[1]

## ANALYSIS

The mother argues that the district court for Madison County erred in concluding that it lacked subject matter jurisdiction, in vacating all its prior orders, and in dismissing her complaint for custody. The mother asserts that Madison County was the proper venue, but that even if it was not, venue is not jurisdictional.

The father argues that the district court for Madison County did not have subject matter jurisdiction over the mother's complaint. Relying primarily on Neb. Rev. Stat. § 43-1412(3) (Reissue 2008), he asserts that such complaint must be made in the underlying paternity action. He also believes that once a filing is made in the district court for Boone County, where the paternity order was issued in 2010, the cause could be transferred to Madison County.

[2] The district court for Madison County was correct in reasoning that it could not transfer the matter to the district court for Boone County if it lacked subject matter jurisdiction. But if the district court for Madison County truly lacked subject matter jurisdiction, then the father would likewise be unsuccessful in his stated intention to have the district court for Boone County transfer the case to the district court for Madison County. We have explained that a procedure permitting a cause of action to be transferred to another district court cannot operate to confer jurisdiction on a tribunal that lacked it.[2]

---

[1]  See *Kotrous v. Zerbe*, 287 Neb. 1033, 846 N.W.2d 122 (2014).

[2]  See *Hofferber v. Hastings Utilities*, 282 Neb. 215, 803 N.W.2d 1 (2011).

The district court for Madison County, however, did not lack subject matter jurisdiction. Instead, under the doctrine of jurisdictional priority, it was precluded in the exercise of its subject matter jurisdiction. Thus, the district court for Madison County was correct in vacating its previous orders and dismissing the mother's complaint. However, because all of the district courts of Nebraska have concurrent subject matter jurisdiction, the parties are free to petition the district court for Boone County to transfer venue to Madison County.

## SUBJECT MATTER JURISDICTION

[3] Subject matter jurisdiction is the power of a tribunal to hear and determine a case in the general class or category to which the proceedings in question belong and to deal with the general subject matter involved.[3] Article V, § 9, of the Nebraska Constitution states that "[t]he district courts shall have both chancery and common law jurisdiction, and such other jurisdiction as the Legislature may provide . . . ." Neb. Rev. Stat. § 24-302 (Reissue 2008) accordingly states that "[t]he district courts shall have and exercise general, original and appellate jurisdiction in all matters, both civil and criminal, except where otherwise provided."

[4] The district courts of Nebraska are courts of general jurisdiction and thus have inherent power to do all things necessary for the administration of justice within the scope of their jurisdiction.[4] Any power conferred by the constitution cannot be legislatively limited or controlled.[5] The Legislature may, however, grant to the district courts such additional jurisdiction as it may deem proper.[6]

---

[3] *Carey v. City of Hastings*, 287 Neb. 1, 840 N.W.2d 868 (2013). See, also, e.g., 24 Am. Jur. 2d *Divorce and Separation* § 171 (2008).

[4] See *Lincoln Lumber Co. v. Elston*, 1 Neb. App. 741, 511 N.W.2d 162 (1993).

[5] See, e.g., *Village of Springfield v. Hevelone*, 195 Neb. 37, 236 N.W.2d 811 (1975). See, also, *Kotrous v. Zerbe, supra* note 1; *Washington v. Conley*, 273 Neb. 908, 734 N.W.2d 306 (2007).

[6] See, e.g., *State, ex rel. Wright, v. Barney*, 133 Neb. 676, 276 N.W. 676 (1937).

[5] We have said that article V, § 9, confers equity jurisdiction upon the district courts.[7] And issues of custody fall within that general equity jurisdiction.[8] Indeed, since a century ago, Nebraska common law has recognized an action in equity for custody apart from an action for dissolution of marriage or paternity.[9] Even when custody is determined within a dissolution or paternity action, it is considered "incidental" to those causes of action.[10] Questions of custody within such actions still derive from the court's general equity jurisdiction.[11]

The paternity statutes therefore cannot circumscribe the district courts' inherent powers in equity to determine child custody. Furthermore, we disagree with the father's contention that the paternity statutes purport to do so. Section 43-1412(3) states:

> If a judgment is entered under this section declaring the alleged father to be the father of the child, the court shall retain jurisdiction of the cause and enter such order of support, including the amount, if any, of any court costs and attorney's fees which the court in its discretion deems appropriate to the be paid by the father . . . .

[6] The paternity statutes modify common law and, therefore, must be strictly construed.[12] The statutes must accordingly indicate what questions can be decided in a paternity action. Matters not indicated, such as division of property, cannot be decided in a paternity action.[13] It appears that the

---

[7] See, e.g., *State, ex rel. Sorensen, v. Nebraska State Bank*, 124 Neb. 449, 247 N.W. 31 (1933).

[8] See, *Blecha v. Blecha*, 257 Neb. 543, 599 N.W.2d 829 (1999); *Cox v. Hendricks*, 208 Neb. 23, 302 N.W.2d 35 (1981).

[9] See *Keup v. Keup*, 98 Neb. 321, 152 N.W. 555 (1915).

[10] See *Cox v. Hendricks, supra* note 8, 208 Neb. at 29, 302 N.W.2d at 38. See, also, *Wassung v. Wassung*, 136 Neb. 440, 286 N.W. 340 (1939).

[11] See *id*.

[12] *Cross v. Perreten*, 257 Neb. 776, 600 N.W.2d 780 (1999); *Riederer v. Siciunas*, 193 Neb. 580, 228 N.W.2d 283 (1975).

[13] See *Cross v. Perreten, supra* note 12. See, also, *Timmerman v. Timmerman*, 163 Neb. 704, 81 N.W.2d 135 (1957).

purpose of § 43-1412(3) is to clarify what legal or equitable issues can properly be determined in a statutory paternity cause of action, nothing more. Furthermore, § 43-1412(3) nowhere states that the jurisdiction of the court in a paternity action is exclusive. There is a difference between original jurisdiction and exclusive jurisdiction.[14]

### Jurisdictional Priority

[7] A different "jurisdictional" doctrine nevertheless supports the district court's order in this case. Under the doctrine of jurisdictional priority, when different state courts have concurrent original jurisdiction over the same subject matter, basic principles of judicial administration require that the first court to acquire jurisdiction should retain it to the exclusion of another court.[15] "Courts enforce the jurisdictional priority doctrine to promote judicial comity and avoid the confusion and delay of justice that would result if courts issued conflicting decisions in the same controversy."[16] To elaborate further:

> The rule is based on the public policies of avoiding conflicts between courts, and preventing vexatious litigation and a multiplicity of suits; the rule is established and enforced, not so much to protect the rights of parties, as to protect the rights of courts of coordinate jurisdiction to avoid conflict of jurisdiction, confusion, and delay in the administration of justice.[17]

The absence of a priority-of-jurisdiction rule would "'unavoidably lead to perpetual collision and be productive of most calamitous results.'"[18]

Thus, the rule of jurisdictional priority is a rule of both judicial comity and courtesy and a rule enforced to prevent

---

[14] See *Washington v. Conley, supra* note 5.

[15] See, e.g., *Molczyk v. Molczyk*, 285 Neb. 96, 825 N.w.2d 435 (2013).

[16] *Id*. at 103, 825 N.W.2d at 442.

[17] 20 Am. Jur. 2d *Courts* § 88 at 474 (2005).

[18] *Edwards v. Nelson*, 372 Ark. 300, 304, 275 S.W.3d 158, 161 (2008).

"unseemly, expensive, and dangerous conflicts of jurisdiction and of process."[19] Another court has explained that the rule of jurisdictional priority has several justifications, both jurisprudential and pragmatic:

> The jurisprudential reason is that once a matter is before a court of competent jurisdiction, "its action must necessarily be exclusive" because it is "impossible that two courts can, at the same time, possess the power to make a final determination of the same controversy between the same parties." . . . A pragmatic justification for the rule is efficiency in that proceedings earlier begun may be expected to be earlier concluded. . . . A final justification is fairness—in a race to the courthouse, the winner's suit should have dominant jurisdiction.[20]

To illustrate, in *Molczyk v. Molczyk*,[21] a dissolution action was brought in one county, but then dismissed for lack of prosecution. Subsequently, however, the husband moved to reinstate the action in the county where originally filed. While the motion to reinstate was pending, the wife filed a dissolution action in another county. The first county reinstated the action, proceeded to trial, and denied the wife's motion to dismiss. On appeal, the husband, having found the district court's order from the first county disadvantageous, argued that the first county lacked jurisdiction. We held that a motion to reinstate a dismissed action, of which the opposing party has notice, has jurisdictional priority over a later complaint filed in a different court involving the same subject matter and the same parties.[22] Therefore, we affirmed the order from the first county.

Some confusion has developed from our failure to always distinguish the improper exercise of jurisdiction under judicial comity from a lack of subject matter jurisdiction. We

---

[19] *Askew v. Murdock Acceptance Corp.*, 225 Ark. 68, 72, 279 S.W.2d 557, 560 (1955).

[20] *Lee v. GST Transport System, LP*, 334 S.W.3d 16, 18 (Tex. App. 2008) (quoting *Perry v. Del Rio*, 66 S.W.3d 239 (Tex. 2001)).

[21] *Molczyk v. Molczyk, supra* note 15.

[22] *Id*.

have sometimes said, under the doctrine of jurisdictional priority, that a second court lacks "jurisdiction."[23] We mean that a subsequent court that decides a case already pending in another court with concurrent subject matter jurisdiction errs in the *exercise* of its jurisdiction.[24] Jurisdictional priority is neither a matter of subject matter jurisdiction nor personal jurisdiction. The subsequent court does not lack judicial *power* over the general class or category to which the proceedings belong and the general subject involved in the action before the court.

In *Barth v. Barth*,[25] the Nebraska Court of Appeals recently emphasized this point that the jurisdictional priority rule is not a question of traditional subject matter jurisdiction, but is rather a question of judicial administration. The Court of Appeals held that a district court where the action was filed secondly properly exercised jurisdiction when the district court where the action was first filed did not demand jurisdictional priority. After the second filing and informally conferring with the district court where the second filing was made, the first court had dismissed the action that had been filed there. The Court of Appeals explained that the principles of judicial administration were met in the second court's exercise of jurisdiction because there was no unnecessary litigation or danger of conflicting decisions.[26]

### Jurisdictional Priority in Continuing Jurisdiction Cases

Although its reasoning was somewhat imprecise, the district court for Madison County was correct that it could not properly exercise its jurisdiction over the mother's complaint for custody. We have not before been presented with the question of whether the first court in a prior paternity action maintains continuing jurisdictional priority over custody of the child

---

[23] See, e.g. *Molczyk v. Molczyk, supra* note 15. See, also, *State ex rel. Storz v. Storz*, 235 Neb. 368, 455 N.W.2d 182 (1990).

[24] Cf. *In re Interest of Jeremy T.*, 257 Neb. 736, 600 N.W.2d 747 (1999).

[25] *Barth v. Barth*, 22 Neb. App. 241, 851 N.W.2d 104 (2014).

[26] *Id*.

when it did not explicitly determine custody in its first order. For the reasons that follow, we hold that the matter of the minor child's custody remained "pending" in the district court for Boone County and that thus, the district court for Madison County could not simultaneously entertain a separate action by the mother for the child's custody.

[8] The rule of jurisdictional priority does not apply unless there are two cases pending at the same time.[27] The doctrine does not apply if the first action terminates, is resolved, or is disposed of before the second action commences.[28]

Furthermore, two pending cases fall under the doctrine of jurisdictional priority only when they involve the same "'whole issue.'"[29] In other words, the two actions must be materially the same,[30] involving substantially the same subject matter and the same parties.[31]

In custody matters, we speak of "'continuing jurisdiction.'"[32] In that sense, the action concerning custody of the child is not terminated, resolved, or disposed of until the age of majority. We have said that an application to modify a custody determination is not an independent proceeding, but is simply a proceeding supplementary or auxiliary to the original action in which certain matters were subject to modification.[33]

Other courts have more specifically held that a court which renders judgment for alimony, custody, or child support incident to an action for divorce or paternity retains the

---

[27] See, e.g., *State ex rel. Vanni v. McMonagle*, 137 Ohio St. 3d 568, 2 N.E.3d 243 (2013); *In re Marriage of Huss*, 888 N.E.2d 1238 (Ind. 2008).

[28] See, *id.*; 21 C.J.S. *Courts* § 258 (2006).

[29] *State, ex rel., v. Morgan*, 17 Ohio St. 3d 54, 56, 476 N.E.2d 1060, 1062 (1985).

[30] See 21 C.J.S., *supra* note 28.

[31] See *In re Marriage of Huss, supra* note 27. See, also, *State ex rel. Otten v. Henderson*, 129 Ohio St. 3d 453, 953 N.E.2d 809 (2011) (must be same causes of action).

[32] See *Nemec v. Nemec*, 219 Neb. 891, 892, 367 N.W.2d 705, 706 (1985). See, also, *Burns v. Burns*, 2 Neb. App. 795, 514 N.W.2d 848 (1994); *Riederer v. Siciunas, supra* note 12.

[33] See, *Nemec v. Nemec, supra* note 32; *Burns v. Burns, supra* note 32.

exclusive exercise of jurisdiction for purposes of modifying such a decree.[34] In other words, where the first district court has issued a custody order, the issue of the child's custody remains pending in that court for purposes of a jurisdictional priority analysis. If the parties in such circumstances wished to proceed on a motion to modify in another county, they would first request from the court that issued the original order a transfer of venue or otherwise gain the original court's assent to another court's exercise of jurisdiction.

The mother in this case points out that there was no explicit custody determination in the paternity order of the district court for Boone County. Still, a recognition of custody was implicit in the district court for Boone County's order that the father pay child support. Furthermore, the district court for Boone County had continuing jurisdiction over the child's custody, whether or not it determined it in the first instance. In this regard, the father is correct that § 43-1412(3) is relevant to our analysis. Section 43-1412(3) states that there is continuing jurisdiction in paternity actions for the court to determine matters relating to the determination of paternity. While the statute does not explicitly specify custody, we have repeatedly recognized custody determinations as appropriate for decision in a paternity action.[35]

In *State ex rel. Storz v. Storz*,[36] we indicated that the first court that exercises jurisdiction in an action involving continuing jurisdiction over custody matters retains the exclusive exercise of jurisdiction over such matters even if they were not explicitly decided in the first appealable order. In *Storz*, the district court for Seward County, in a paternity action, had ordered custody of the minor child with the father. The mother later asked that court to set aside its order on the grounds that the child was conceived before the decree of dissolution became final and that therefore, the district court for

---

[34] See *Trahant v. Ingram*, 393 So. 2d 901 (La. App. 1981).

[35] See, e.g., *Mitchell v. French*, 267 Neb. 656, 676 N.W.2d 361 (2004); *Jones v. Paulson*, 261 Neb. 327, 622 N.W.2d 857 (2001).

[36] *State ex rel. Storz v. Storz, supra* note 23.

Hall County, which had entered the order of dissolution, had the exclusive exercise of jurisdiction over the child's custody. The district court that decided the paternity action denied the mother's motion, but we reversed.

We said that the district court that decided the dissolution action had continuing jurisdiction over the child's custody, despite the fact that its original order did not address the custody issue. We reasoned that "the existence of a child born of the marriage would have ramifications with respect to the decree."[37] We further explained that "since the child was conceived during the marriage of the father and mother, it was improper to bring a paternity action rather than an action to amend the dissolution decree."[38] We concluded that because no application was made to transfer the Hall County dissolution proceeding, the district court for Seward County could not exercise jurisdiction to decide issues related to the custody of the child.[39]

[9] We hold that it is consistent with the principles of judicial comity and courtesy underlying the doctrine of jurisdictional priority to consider the matter of a child's custody still "pending" in the district court wherein the original action for paternity was brought until that court relinquishes its jurisdictional priority or the child reaches the age of majority. Recognizing the continuing jurisdictional priority of a district court over a paternity action and all matters properly decided in a paternity action furthers the purposes of avoiding delay and confusion that could result from a multiplicity of suits or vexatious litigation.

Here, the original action for paternity and the mother's subsequent action for custody are materially the same. They involve the same subject matter of the child's paternity and its concomitant support and custody issues. They also involve substantially the same parties. Because two actions that were materially the same were pending at the same time, the district

---

[37] *Id.* at 372, 455 N.W.2d at 184.

[38] *Id.* at 373, 455 N.W.2d at 185.

[39] *Id.*

court for Boone County, where the action was brought first, had jurisdictional priority.

Because the district court for Boone County did not transfer the cause or otherwise relinquish its continuing jurisdictional priority, the district court for Madison County did not err in vacating its orders, denying the mother's motion for change of venue, and dismissing the complaint. It was proper for the district court for Madison County to defer to the district court for Boone County, in which these matters were still pending.

## CONCLUSION

For the foregoing reasons, we affirm the district court's order vacating its prior rulings, overruling the mother's motion for change of venue, and dismissing the mother's complaint without prejudice.

AFFIRMED.

HEAVICAN, C.J., not participating.